Richard A. NAPOLITANO, Plaintiff-Appellant,

v.

Hon. Daniel P. WARD, Justice of the Illinois Supreme Court, et al., Defendants-Appellees.

No. 71–1444.

United States Court of Appeals, Seventh Circuit.

March 21, 1972.

As Amended April 24, 1972.

John E. Cassidy, Jr., Peoria, Ill., James P. Chapman, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Jayne A. Carr, Asst. Atty. Gen., Edward V. Hanrahan, State's Atty., James A. Rooney, Asst. State's Atty., Chicago, Ill., Richard A. Hollis, Springfield, Ill., Joel M. Flaum, First Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge and GRANT *, District Judge.

DUFFY, Senior Circuit Judge.

This is an appeal from a judgment of the District Court dismissing plaintiff's amended complaint and his cause of action.[1]

The plaintiff-appellant was duly elected a Circuit Judge, Cook County, Illinois, in 1968. He was removed from office "for cause" by the Illinois Courts Commission [2] on July 14, 1970.

The instant suit is based on the Civil Rights Act (42 U.S.C. § 1983) and 28 U.S.C. §§ 1343, 2201 and 2202. The defendants are the five judicial members of the Illinois Courts Commission, its secretary and the Attorney General of Illinois.

Plaintiff claims that his removal from the office of Circuit Judge, under color of Section 18 of Article VI of the Illinois Constitution and Rule 51, Rules of the Supreme Court of Illinois, deprived him of his rights under the Self-Incrimination and Due Process Clauses of the Fifth and Fourteenth Amendments, United States Constitution.

In September 1969, the Sangamon County, Illinois Grand Jury began an investigation into charges relating to the administration and management of the Illinois State Fair. Judge Napolitano was called as a witness by the Grand Jury. On advice of counsel, he refused to answer any questions as to his business dealings with the State Fair on the ground that any answers might tend to incriminate him.

Upon motion of the State's Attorney, Judge Napolitano was granted full transactional immunity in return for his testimony before the Grand Jury.

In his testimony before the Grand Jury, Judge Napolitano outlined his business dealings with the State Fair Management. This testimony related to the procedures whereby appellant secured 42 contracts for concession space at the State Fairs for each year of 1961 to 1969. The appellant usually sublet most of the locations but kept nine or ten spaces for himself.

---

* Chief District Judge Robert A. Grant of the Northern District of Indiana, is sitting by designation.

1. The District Court's findings and conclusions may be found in the Memorandum Opinion and Order as Napolitano v. Ward, 317 F.Supp. 83 (N.D.Ill., 1970).

2. The Illinois Courts Commission was vested with the power to discipline or remove a state judicial officer for cause under Article VI, Sec. 18 of the Illinois Constitution (1870). Rule 51 of the Illinois Supreme Court implemented this constitutional provision by convening the Courts Commission and establishing its procedural rules. The Commission is composed of five state judges from various state courts.

The Grand Jury returned several indictments charging various State Fair officials with official misconduct and conspiracy. The appellant was named as a non-indicted co-conspirator.

At the direction of the Supreme Court of Illinois, appellant was relieved of all assignments on February 5, 1970. On February 13, 1970, the Illinois Courts Commission designated the Attorney General of Illinois to prepare and file a complaint against the appellant. This was done on March 19, 1970, charging him with impropriety and the appearance of impropriety in violation of the Canons of Judicial Ethics.

Beginning July 7, 1970, a formal hearing was had before the Illinois Courts Commission on these charges. Appellant was present and was represented by counsel. Documentary evidence, including the transcript of appellant's testimony before the Grand Jury, was considered.

On July 14, 1970, the Courts Commission found the evidence to be clear and convincing that appellant's conduct ". . . violates applicable Canons of Judicial Ethics including Canon 4 of the Canons of Ethics adopted by the Illinois Judicial Conference and constitutes cause within the meaning of Section 18, Article 6 of the Illinois Constitution warranting his removal from office." [3]

An appeal was taken from this decision to the Supreme Court of Illinois. That Court held that the right of appeal to that Court did not exist, holding the proceedings before the Commission to be *sui generis*.

Appellant then attempted to appeal to the Supreme Court of the United States. That Court dismissed the appeal for want of a federal question. In re Napolitano, 401 U.S. 951, 91 S.Ct. 978, 28 L.Ed.2d 235 (1971), Justice Brennan would have dismissed the appeal for want of jurisdiction.

Prior to the hearing before the Illinois Courts Commission, appellant filed a motion with the United States District Court, Northern District of Illinois, for a temporary restraining order to prevent the Commission hearing, and further requesting the convening of a three-judge court, alleging a violation of his civil rights.

The motion for a temporary restraining order was denied by the single Judge before whom the suit was filed.

A three-judge panel was convened and affirmed the dismissal of denial of the temporary restraining order. The three-judge panel then terminated the panel and remanded the case to the single judge for a determination of the factual issues raised in the complaint. Napolitano v. Ward, 317 F.Supp. 79 (N.D. Ill., 1970).

On March 26, 1971, the District Court dismissed appellant's amended complaint with prejudice and entered judgment in favor of defendants-appellees. It is from this order that the appellant now appeals.

On this appeal, appellant asserts his primary argument before us is "for Declaratory Relief under 28 U.S.C. § 2201 and then such further relief as will vindicate the injury to plaintiff and redress defendants' violations of the Constitution of the United States."

The principal issue before us is whether the conduct for which appellant was removed from office may be established by the Courts Commission from the use of his testimony before a Grand Jury compelled by a grant of full transactional immunity.

■■■■ The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." The Fifth

---

3. Canon 4 of the Canons of Judicial Ethics provides, "A Judge's conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of law; and his personal behavior not only upon the bench and in the performance of judicial duties, but also in his everyday life, should be beyond reproach."

Amendment privilege against self-incrimination thus protects an individual from being a witness against himself in a criminal matter and is applicable to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The privilege may be invoked in any proceeding against an individual, either civil or criminal, in which testimony or evidence is requested of that individual which could expose him to later criminal prosecution.

■ The thrust of the Constitutional privilege against self-incrimination has two interrelated objectives, "The Government may not use compulsion to elicit self-incriminating statements, and the Government may not permit use in a criminal trial of self-incriminating statements elicited by compulsion." Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 57 n. 6, 84 S.Ct. 1594, 1598 n. 6, 12 L.Ed.2d 678 (1964). The privilege is directed at insulating an individual from criminal penalties imposed from testimony or evidence said individual was compelled to give, either by physical or mental coercion, Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), or by threat of contempt, Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896).

■ However, the Constitution permits the compulsion of otherwise self-incriminatory testimony if the witness has been granted immunity coextensive with the Fifth Amendment privilege. Counselman v. Hitchcock, 142 U.S. 547, 12 S. Ct. 195, 35 L.Ed. 1110 (1892); Brown v. Walker, *supra*; Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); Murphy v. Waterfront Commission of New York Harbor, *supra*. In *Brown, supra,* the Supreme Court upheld a complete transactional immunity statute relying on the fact that under the challenged statute, a witness testifying under compulsion "operates as a pardon" for any crimes revealed by his testimony.

In Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960), Mr. Justice Frankfurter, in an opinion for the Supreme Court upheld a transactional immunity statute. The Court responded at 364 U.S., page 514, 81 S.Ct., page 264, to petitioner's argument that the immunity granted by the Government was not coextensive with the constitutional privilege replaced:

> The complete answer to this is that in safeguarding him against future federal and state prosecution 'for or on account of any transaction, matter, or thing concerning which he is compelled' to testify, the statute grants him immunity fully coextensive with the constitutional privilege. Some language in Brown v. Walker, 161 U. S., at 601, 16 S.Ct. at 648 [40 L.Ed. 819] . . . compares immunity statutes to the traditional declarations of amnesty or pardon. But neither in that opinion nor elsewhere is it suggested that immunity statutes, to escape invalidity under the Fifth Amendment, need do more than protect a witness from future prosecutions.

Ill.Rev.Stat., 1969, Chap. 38 Sec. 106–1 provides that "in any investigation before a Grand Jury . . . the Court on motion of the State may order that any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce."

■ It is evident from the facts presented upon appeal that appellant was appropriately insulated from future Illinois criminal prosecution as a consequence of his testimony before the Grand Jury. Immediately after his testimony, various State Fair officials were indicted for their activities concerning State Fair Concession contracts. Appellant was named as an unindicted co-conspirator resulting from his dealings with State Fair concession contracts, but he never was or has been subjected to criminal prosecution for "any transac-

tion, matter or thing" arising from the immunized testimony.

Furthermore, appellant was not subjected to prosecution under federal law following his immunized testimony. Therefore, the transactional immunity conferred by the State of Illinois upon the appellant is consistent with the mandate of *Counselman, supra,* that absolute immunity from prosecution must be granted before the Government or other political entity can compel a witness to testify.

We hold that the transactional immunity granted appellant by the State of Illinois was coextensive with his Fifth Amendment privilege against self-incrimination.

A related question raised on this appeal by appellant is whether the hearing before the Courts Commission and his subsequent removal from office constituted a penal aspect of criminal proceedings, thereby transcending his transactional immunity.

While appellant has admitted the validity of the "for cause" standard of removal as applied to his case and so aptly applied by the District Court in Napolitano v. Ward, 317 F.Supp. 79 (N.D.Ill., 1970), he has attempted to distinguish the "for cause" standard applied to his behavior on the bench from his personal behavior apart from his judicial duties.

Canon 4 of the Judicial Canons of Ethics, is based upon the premise that both the personal and professional behavior of a judicial officer are relevant to his qualifications to act as a judge. Any violation of these Canons subject a judicial officer to discipline or to removal following proper due process requirements.

A state is not required to allow a judge to occupy a state judicial office, Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). The privilege of occupying such an office is one granted by a state, not a right secured by constitutional mandate. It is clearly evident from the pertinent Court decisions that a state may require a public servant to account for the performance of his duties upon pain of dismissal, providing the judicial officer or state employee is accorded the full protection of the Fifth Amendment privilege against self-incrimination.

Furthermore, conduct which does not constitute a criminal offense may be sufficiently violative of the Judicial Canons to warrant removal for cause. The District Court so found herein. See Friedman v. Court on the Judiciary of New York, 375 U.S. 10, 80 S.Ct. 70, 11 L.Ed. 2d 40 (1963); Sarisohn v. Appellate Division, Second Department, Supreme Court of the State of New York, 265 F. Supp. 455 (E.D.N.Y.1967); Matter of Osterman, 13 N.Y.2d a (1963), cert. den. Osterman v. Court on the Judiciary of the State of New York, 376 U.S. 914, 84 S.Ct. 660, 11 L.Ed.2d 611 (1964).

Appellant's contention that he was removed for only his personal behavior is not supported from the record of this case and the pertinent Canons of Judicial Ethics. We feel the framers of the Canons were of the view that separation of the behavior of a judge while off the bench from his conduct in the courtroom is impossible.

Here appellant has been accorded every possible protection guaranteed by the Fifth Amendment. The hearing before the Illinois Courts Commission afforded him a fair hearing as required by law. He has suffered no criminal punishment resulting from his immunized testimony nor was the removal herein a penal aspect of criminal proceedings.

We hold the procedures by which appellant was removed from the office of Circuit Court Judge of Cook County, Illinois, are in accord with the requirements of the Fifth Amendment.

The order and the judgment of the District Court hereinbefore discussed is

Affirmed.