[No. G009613. Fourth Dist., Div. Three. Nov. 20, 1991.]

HAROLD D. BARTRAM et al., Plaintiffs and Appellants, v.,
FEDERAL DEPOSIT INSURANCE CORPORATION et al., Defendants
and Respondents.

**COUNSEL**

Snell & Wilmer and Raymond J. Ikola for Plaintiffs and Appellants.

Arter, Hadden, Lawler, Felix & Hall, Edwin W. Duncan, J. Michael Echevarria, Ann S. DuRoss, Colleen B. Bombardier and Christopher J. Bellotto for Defendants and Respondents.

**OPINION**

**SONENSHINE, J.**—Is the Federal Deposit Insurance Corporation (FDIC), acting as manager of the Federal Savings and Loan Insurance Corporation

(FSLIC) Resolution Trust and receiver for an insolvent savings and loan, protected from a claim of fraud when the debtors have performed their obligations? Relying on *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.* (1942) 315 U.S. 447 [86 L.Ed. 956, 62 S.Ct. 676], we conclude that it is.

I.

Harold and Donna Bartram and Joseph and Vita Tessitors (hereafter the Bartrams) engaged a realtor to sell or exchange two of the four parcels of land they owned. On May 31, 1985, the Bartrams and John Molinaro, the chairman of the board of Ramona Savings and Loan, executed a real estate exchange contract. Ramona would receive the Bartrams' two undeveloped parcels of land valued at $2,279,600 in exchange for 32 condominium units owned by Ramona and valued at $3,410,450. A $1,130,850 note provided the difference in value between the land and the condominiums.

A few weeks later and before escrow closed, the Bartrams were told their parcels had been overvalued and the promissory note had to be increased to $1,730,000. Subsequently, Molinaro explained that Ramona would be developing the parcels it was purchasing and the value of the land retained by the Bartrams would therefore increase. On June 25, the real estate contract was amended: The land's value was decreased, and the amount of the note was increased. No mention was made of Ramona's intent to develop the property. On July 1, escrow closed. Subsequently, the Bartrams paid the $1,730,000 note.

Ramona did not develop the property; in fact, less than a month after the close of escrow, Ramona sold the property to a third party. Unhappy, the Bartrams filed the underlying suit in June 1986, alleging fraud and negligence. The Bartrams sought $600,000 in compensatory damages, the difference between the property's alleged market value and the contract price, plus punitive damages and costs.

Ramona and Molinaro cross-complained against the Bartrams for fraud, negligent misrepresentation, and rescission. The cross-complaint also sought declaratory relief for indemnification from Rancho and Walmer.

On September 12, the Federal Home Loan Bank Board placed the state-chartered Ramona into receivership, appointed the FSLIC receiver and created a new federally chartered entity, Ramona Federal Savings and Loan Association (Ramona Federal).

On August 9, 1989, Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), which abolished the

FSLIC and established, for institutions like Ramona, the FSLIC Resolution Fund. The FDIC was appointed manager of the FSLIC Resolution Fund (12 U.S.C. § 1441a(b)(6)), and in that capacity replaced Ramona as defendant and cross-complainant. The FDIC's answer alleged that the doctrine set forth in *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp., supra,* 315 U.S. 447, as well as 12 United States Code section 1823(e), barred the Bartrams' action. The trial court granted the FDIC's motion for judgment on the pleadings. Thereafter, the FDIC dismissed the Ramona cross-complaint with prejudice. Rancho, Walmer, and the Bartrams settled. The Bartrams were awarded a $600,000 default judgment against Molinaro.

## II.

### The D'Oench Doctrine

In *D'Oench, Duhme & Co.*, a securities dealer sold bonds to a bank. After default on the bonds, the firm's president executed a note in favor of the bank so that the transaction could be carried on the bank's books as an asset rather than as a liability. An oral agreement that the note need not be paid was reflected on a receipt, but not on the note. Thereafter, the bank charged off the note.

The bank was declared insolvent and the FDIC was appointed as receiver. When the FDIC sued on the note, the oral agreement was raised as an affirmative defense. The court held that a federal policy, evidenced by the Federal Reserve Act, existed to "protect [the FDIC] from misrepresentations made [by the bank] to induce or influence [third parties], including misstatements as to the . . . integrity of securities . . . ." (*D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp., supra,* 315 U.S. at p. 459 [86 L.Ed. at p. 963].) Allowing a secret agreement as a defense would enable the notemaker to defeat the statute's purpose. The purpose of the federal policy articulated by the Supreme Court in *D'Oench* "is to allow federal and state bank examiners to rely on a . . . bank's assets." (*Langley* v. *FDIC* (1987) 484 U.S. 86, 91 [98 L.Ed.2d 340, 347, 108 S.Ct. 396].) " 'The doctrine encourages debtors to memorialize all agreements in writing and reflects the equitable principle that losses incurred as a result of unrecorded arrangements should not fall on deposit insurers, depositors, or creditors but rather upon the person who could have best avoided the loss. [Citations.]' " (*Webb* v. *Superior Court* (1990) 225 Cal.App.3d 990, 995 [275 Cal.Rptr. 581].)

Recently, an even "more expansive protection of federal bank insurers developed in the federal common law following *D'Oench.*" (*Vernon* v. *Resolution Trust Corp.* (11th Cir. 1990) 907 F.2d 1101, 1106.) "The doctrine has been expanded to encompass *any* claim against an insolvent institution that

would either diminish the value of the assets held by the FSLIC or increase the liabilities of the insolvent institution. [Citation.]" (*Castleglen, Inc.* v. *Commonwealth Sav. Ass'n* (D.Utah 1989) 728 F.Supp. 656, 671, italics added.)

## III.

### D'Oench Bars the Bartram Claim

The Bartrams acknowledge the *D'Oench* doctrine but maintain it is inapt here. They concede "*D'Oench* bars any defense or claim based upon a 'secret agreement' which seeks to defeat or diminish the value of a particular asset held by the federal insurer where the claim or defense is asserted as a dollar-for-dollar offset against the specific asset sought to be collected by the federal insurer; but [argue] to the extent the affirmative claim represented by the 'secret agreement' is otherwise established as a valid claim, the holder of the claim is entitled to share pro-rata in the general assets of the receivership estate together with all general creditors."

The Bartrams recognize they could not defend on the basis of the secret agreement if they were being sued on the note. They concede they could not rely on the secret agreement if they were suing to invalidate the note. They urge, however, such is not the case. They are plaintiffs suing in tort for compensation for damages resulting from the bank's misrepresentation. They maintain that because they do not seek dollar-for-dollar compensation, they should not be denied the opportunity to stand as general creditors and be compensated pro-rata with all of the other bank's creditors.

Several courts have already addressed these arguments. In *Hall* v. *Federal Deposit Ins. Corp.* (6th Cir. 1990) 920 F.2d 334, the plaintiffs were parties to a loan contract requiring the lender to fully fund their project. Because the Halls never provided the required security interest, the lender failed to fully fund the project. The Halls received funding elsewhere, paid off the original lender, and then sued the lender for breach of contract. The Halls claimed an oral agreement excused them from providing the security. The court held, even if such secret agreement existed, *D'Oench* barred the claim. (*Id.* at p. 340.)

The *Hall* court acknowledged that in most cases where the *D'Oench* doctrine has been applied, "an interest in *an asset* of an insolvent bank" existed. (*Hall* v. *Federal Deposit Ins. Corp., supra,* 920 F.2d. at p. 339, italics added.) But the court explained that was only because "typically [the] FDIC was suing to collect on a note . . . ." (*Ibid.*) It observed the "logic of

*D'Oench* should still apply to protect FDIC" (*ibid.*) even when an interest in an asset ceases to exist.[1]

The *Hall* court recognized the sound policy reason for applying *D'Oench* to our facts. "If . . . *D'Oench* did not apply to bar the introduction of evidence of a side agreement in a claim against FDIC (or FSLIC), then an obligor could circumvent the sound policy behind *D'Oench* by asserting as a counterclaim that which could not be asserted as an affirmative defense. . . . [¶] . . . [Thus e]xaminers for FSLIC could easily have over-estimated the value of the loan agreement [or property] on the books because of the alleged unevidenced [agreement to develop the property]. . . . The *D'Oench* doctrine is intended to avoid exactly this sort of potential confusion." (*Id.* at p. 340.)[2]

*Bell & Murphy & Assoc.* v. *Interfirst Bank Gateway* (5th Cir. 1990) 894 F.2d 750 is also instructive. After Bell sought help from a bank in solving severe cash flow problems, the parties entered into an agreement. Bell was to surrender its accounts receivable and its pension and profit sharing plans to the bank, which would extend open loans and honor checking overdrafts. This arrangement was memorialized in a letter but was not reflected in the bank's records. After the bank failed to live up to the terms of the letter agreement, the plaintiffs sought damages for fraudulent misrepresentations. The FDIC intervened as receiver and was successful in its summary judgment motion. The trial court concluded the bank could not be held to its agreement to extend loans and to fund overdrafts; the agreement was unrecorded in the bank's records.

On appeal, Bell argued "the *D'Oench Duhme* rule bars only claims or defenses based upon unrecorded side agreements that defeat the FDIC's interest in a *specific asset* acquired from a bank." (*Id.* at p. 753.) Because the side agreement could not have misled the FDIC, Bell maintained *D'Oench* was inapt. The court made short shift of this argument, finding it to be meritless. (*Ibid.*)

Because the *Bell* agreement was not clearly evidenced in the bank's records, it was not apparent to the bank examiner who could have been

---

[1]One example cited by the court is particularly apt here. "[A]n obligor and a bank in receivership might have mutual breach of contract claims growing out of loan documents in the bank's records. The obligor, anticipating a suit by FDIC, might quickly pay off the note in an attempt to block FDIC's resort to the *D'Oench* doctrine. Under these circumstances, the fact that the obligor paid off the debt so as that [*sic*] FDIC did not have 'an interest in an asset' should not prohibit FDIC from invoking *D'Oench*." (*Ibid.*)

[2]As *Hall* observed, however, its holding does not preclude all claims against the FDIC, only those based on oral side agreements which could have been recorded. (*Id.* at pp. 340-341.) Indeed, the *Hall* dissent seems to have missed this point. Justice Jones argued that *D'Oench* should be limited to circumstances where the FDIC had acquired an asset. (*Id.* at p. 341.) As explained by the majority, that argument is irrelevant to the *D'Oench* doctrine.

misled. "Thus, it could not have been discovered by [the examiner] and is not enforceable against the FDIC." (*Ibid.*) And the same is true here. Indeed, to miss this point is to fail to understand *D'Oench's* significance. *Oral agreements cannot be enforced because bank examiners must be able to rely on the bank's written records.*[3]

At oral argument, the Bartrams urged us to note that general creditors were junior to the FDIC. Thus, were the Bartrams to prevail, public monies would be repaid prior to their pro-rata share. We find no authority for that suggestion.

Indeed, the FDIC is a general creditor. (*Federal Deposit Ins. Corp.* v. *Jenkins* (11th Cir. 1989) 888 F.2d 1537, 1546.) As such, it has no priority over other creditors of insolvent institutions.

Recently, *Walsh* v. *New West Federal Savings & Loan Assn.* (1991) 234 Cal.App.3d 1539 [1 Cal.Rptr.2d 35] considered a fact situation similar to ours. The plaintiffs sued a savings and loan alleging fraud, conspiracy to defraud, and breach of contract after the financial institution failed to transfer certain property to them as promised. The FSLIC, which had taken possession of all the savings and loan assets, successfully raised the *D'Oench* doctrine as a complete defense. "[T]his case comes within the . . . doctrine because (1) the [plaintiffs] are attempting . . . to recover for oral misrepresentations . . . (2) which would reduce the value of assets formerly held by [the savings and loan]." (*Id.* at p. 1545.)

As the *Walsh* court observed, "Admittedly this case does not fit within the usual pattern into which a *D'Oench Duhme* defense is generally asserted. The Walshes do not allege a borrower/lender relationship between themselves and State Savings. Moreover, the focus of their action is not the enforceability of a promissory note to which they made a contemporaneous

---

[3]We realize the Bartrams are innocent of any wrongdoing. Unlike the *D'Oench* plaintiffs, they did not join with the bank to mislead the banking authorities. But "courts in numerous subsequent decisions have applied the *D'Oench, Duhme* rule in cases in which the borrower was innocent of any wrongdoing, holding that the relevant question is not whether the secret agreement was itself fraudulent or whether the borrower intended to deceive banking authorities, but rather whether the borrower 'lent himself to a scheme or arrangement' whereby those authorities were likely to be misled. [Citations.] The *D'Oench, Duhme* doctrine thus favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can. [Citations.] [¶] Hence, it is irrelevant to the applicability of the *D'Oench, Duhme* rule whether [the plaintiffs] acted in good faith and even whether [they were] 'coerced,' under 'economic duress,' into accepting the terms of the agreement . . . . [They] could have protected [themselves] by insisting that the bank properly record the agreement; because [they] did not, [they are] estopped from asserting any claims arising out of the bank's alleged secret promise to make future loans." (*Bell & Murphy & Assoc.* v. *Interfirst Bank Gateway, supra,* 894 F.2d 750 at pp. 753-754.)

oral agreement. Nonetheless, mindful of the federal court's expansive inter-pretations of the doctrine and consistent with the authorities cited, conclude this case comes within the *D'Oench Duhme* doctrine . . . ." (*Id.* at p. 1545.) All of the elements of *D'Oench* were present: an oral agreement unsubstan-tiated in the records, an opportunity for the bank examiner to be misled, and a potential for loss by the financial institution.

The Bartrams rely on *Vernon* v. *Resolution Trust Corp., supra,* 907 F.2d 1101. There, the Vernons bought stock in a savings and loan institution. After it proved worthless, they sued, alleging misrepresentations by the institu-tion's officers, legal counsel, and bankers regarding its condition induced them to purchase the stock. They complained the bank's true financial condition was not disclosed. The court refused to apply the *D'Oench* doc-trine. "Appellants are not obligees trying to avoid their commit-ment . . . . The . . . Agreement [has been] fully executed. . . . [Instead a]ppellants wish to obtain compensation from the general assets of [the institution] . . . for the damages they claim to have suffered as stockhold-ers due to the alleged tortious acts of [the institution]." (*Id.* at pp. 1107-1108.)

*Vernon* does not compel a different result. First, it is distinguishable. The Vernons' suit was not predicated upon an oral agreement. Rather their complaint was that the financial records presented to them were fraudulent. Nor did they claim they were told one thing but shown another, as in our case.

Second, *Vernon* does not stand for that which the Bartrams allege it does. They maintain *Vernon* allows all tort plaintiffs who sue as general creditors to maintain a suit against an insolvent financial institution's assets. This is incorrect. *Vernon* simply allowed such a claim *under the facts presented there.* To the extent *Vernon* goes any further, it is wrong.

Relying on *Astrup* v. *Midwest Federal Sav. Bank* (8th Cir. 1989) 886 F.2d 1057, *Vernon* implies that *D'Oench* affords no protection against tort claims. However, that statement, taken from *Astrup,* must be read in context. The *Astrup* plaintiffs sued a financial institution for breach of contract, alleging it failed to provide favorable financing as orally promised, and for breach of a fiduciary duty. The *Astrup* court disallowed the contract claim, noting *D'Oench* "precluded recovery by [plaintiff] on the basis of agreements which contradicted the [institution's] records . . . ." (*Id.* at p. 1059.)

The court did not, however, bar the tort action, finding "the law imposes a fiduciary duty on parties to a joint venture towards other parties in the venture." (*Astrup* v. *Midwest Federal Sav. Bank, supra,* 886 F.2d at p. 1059.) The *Astrup* court did say *D'Oench* bars recovery for causes of action based

in contract but not those founded in tort. Reading the case as a whole, it is clear that is not what the court meant. The court itself explains that some tort actions may be precluded. The "doctrine affords no protection against tort claims against a financial institution, whether for personal injuries to a motorist in a collision with an armored car . . . or for insider profits in a sale of securities . . . ." (*Id.* at pp. 1059-1060.) In other words, torts unrelated to agreements which could have been memorialized in the bank's records are not protected by *D'Oench.* However, the doctrine does not provide blanket tort protection anymore than it bars all breach of contract claims.[4]

The Bartrams give great weight to *Vernon's* reliance on former 12 United States Code section 1729(d) which empowered the FSLIC to pay claims proved to the FSLIC's satisfaction and allowed claimants, if necessary, to bring suit to have a court determine the validity of their claims.[5] The statute's intended thrust was to compel the payment of valid claims and to provide claimants an opportunity to be heard when the FSLIC failed to pay. The Vernon court reasoned the FDIC, which receives the benefit of federal policy when defending on an unrecorded obligation, has the burden of paying on a valid claim. True enough, but the *Vernon* court mixed dollars and cents. Just because the FDIC is mandated to honor valid claims does not validate unrecorded side agreements.

Simply stated, the Bartrams should have insisted the bank's representation that it intended to develop the purchased property be put in writing as part of the bank's records. Having failed to do that, they can neither seek to enforce this oral agreement nor ask for compensation because of it. And this is true whether the complaint is framed in tort or contract, whether asserted

---

[4]We note *Federal Deposit Insurance Corp.* v. *Meo* (9th Cir. 1974) 505 F.2d 790, where the plaintiffs executed a promissory note to the bank to enable them to purchase bank common stock. The bank instead issued voting trust certificates. The purchaser never saw these because they were held as collateral. When the bank sued on the unpaid note, the purchasers raised the misissued stock as a defense. The court agreed, finding no consideration. "Appellant was a bona fide purchaser-borrower; he did not enter into any scheme or secret agreement whereby the assets of the bank would be overstated; . . . he was not negligent in failing to discover the manner in which the stock order was actually executed; and, most importantly, appellant had no knowledge whatsoever of the failure of consideration until after the bank was closed and appellee instituted this suit." (*Id.* at p. 792.)

[5]Former 12 United States Code section 1729(d) provided: "In connection with the liquidation of insured institutions, the Corporation shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board, or, in cases where the Corporation has been appointed conservator, receiver, or legal custodian solely by a public authority having jurisdiction over the matter other than said Board, subject only to the regulation of such public authority." The repealed section has been replaced by 12 United States Code section 1821(d) which outlines the powers and duties of a receiver.

affirmatively or as a defense, or whether they are general creditors or plaintiffs seeking a specific asset. The *D'Oench* doctrine bars their claim.[6]

The judgment is affirmed. Respondents to receive costs on appeal.

Sills, P. J., and Crosby, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 27, 1992.

---

[6]In light of the above, we need not consider whether 12 United States Code section 1823(e) bars the Bartrams' claim. This section provides: "No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—[¶] (1) is in writing, [¶] (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, [¶] (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and [¶] (4) has been, continuously, from the time of its execution, an official record of the depository institution."