[No. F016069. Fifth Dist. Sept. 11, 1992.]

PHILIP WEBER et al., Plaintiffs and Appellants, v.
NEW WEST FEDERAL SAVINGS AND LOAN ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Douglas L. Hurt for Plaintiffs and Appellants.

■

Brown & Wood, Richard B. Schreiber and Michael S. Danko for Defendant and Respondent.

## OPINION

## BIANCHI, J.*—

### INTRODUCTION

Title 12 United States Code section 1823(e) (section 1823(e)) is a section of the Federal Deposit Insurance Act which invalidates certain agreements between a bank and its obligor(s) that tend to diminish the interest of the Federal Deposit Insurance Corporation (FDIC) in assets acquired by it in its corporate capacity. In sum, section 1823(e) provides that unless a bank and its borrower(s) execute a written agreement which has gone through all the normal approval processes of the bank, and said agreement is a part of the bank's records, the FDIC is not required to honor the agreement when it takes over the assets of the bank, should the bank fail.

Section 1823(e) is a partial codification of the so-called *D'Oench, Duhme* doctrine (*D'Oench, Duhme & Co.* v. *F.D.I.C.* (1942) 315 U.S. 447 [86 L.Ed. 956, 62 S.Ct. 676]), widely recognized and applied as an equitable rule of estoppel. (*Walsh* v. *New West Federal Savings & Loan Assn.* (1991) 234 Cal.App.3d 1539, 1542-1543 [1 Cal.Rptr.2d 35]; *Webb* v. *Superior Court* (1990) 225 Cal.App.3d 990, 995 [275 Cal.Rptr. 581]; see Note, *Borrower Beware: D'Oench Duhme and Section 1823 Overprotect the Insurer When Banks Fail* (1988) 62 So.Cal.L.Rev. 255, 271 [hereafter Note].)

It is widely recognized in federal and California cases that the *D'Oench, Duhme* doctrine is applicable as well in receivership actions involving the Federal Savings and Loan Insurance Corporation (FSLIC) and its member savings and loan associations. (*Webb* v. *Superior Court, supra,* 225 Cal.App.3d at pp. 1001-1002; *Victor Hotel Corp.* v. *FCA Mortg. Corp.* (11th Cir. 1991) 928 F.2d 1077, 1082-1083; Note, *op. cit. supra,* 62 So.Cal.L.Rev. at pp. 266-267.) The defendant/respondent here evolved from the actions of the FSLIC as receiver, in reference to a series of successor and newly created savings and loan associations, the final entity here being defendant/respondent New West Federal Savings and Loan Association (New West).

■ The question presented is whether the trial court erred in barring admission of a savings and loan association document proffered by plaintiffs

---

*Retired judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.

in support of their breach of contract action because it did not satisfy the terms of section 1823(e). The trial court recognized the statute itself did not specifically apply to the FSLIC, but concluded "the codification itself is no different from the common law *D'Oench, Duhme* rule."

PERTINENT FACTS[1]

In March of 1979 plaintiffs and appellants Philip and Donna Weber entered into an escrow to purchase a 108-acre tract of land known as the Golden Dawn Ranch. They proposed to develop the parcel, located at the corner of Kings Canyon and Fowler Avenues in the County of Fresno. In July of 1980, while the property remained in escrow, the Webers sold an undivided one-half interest in their purchase agreement to William and Joan Probasco.

Escrow closed on the $2.2 million sale on October 10, 1980. On the date escrow closed, a vice-president of State Savings and Loan Association (State Savings) wrote Philip Weber and William Probasco (the general partners) a letter on behalf of State Savings setting out the terms of a proposed 24-month, $6.9 million development loan. Subject to a number of express conditions precedent, the letter provided "[t]his letter shall constitute a commitment by us upon your [written] acceptance of its terms, and payment of our commitment fee of $17, 453 [*sic*], on or before October 30, 1980."

However, the gist of this so-called "commitment letter" by State Savings was not previously approved by the State Savings executive committee during a telephone poll on October 7, 1980. Rather, as reflected in the "meeting" minutes of the executive committee, the committee proposed advancing two loans in the total amount of $1.1 million in order to facilitate purchase of the property, provide funds for processing the final map and pay certain fees. Shortly thereafter the executive committee approved such a loan.[2] The meeting minutes, executed October 28, 1980, reflect the following plan of the executive committee: "When the subdivision map is approved, further consideration will be given this project by the Real Estate Investment Department."

After numerous preliminary steps, the Fresno Planning Commission recommended approval of a tentative map and the rezoning and conditional use

---

[1]The following facts are drawn from the "Defendant's Trial Brief," the exhibits attached thereto and "Plaintiffs' Opposition to [Defendant's] Motion in Limine . . . ." Although the parties submitted an agreed "neutral statement of the case" to the trial court, it has not been made a part of the record on appeal.

[2]The general partners obtained two construction loans from State Savings in the total amount of $1.1 million in return for a promissory note and a third deed of trust on the property. Apparently no money was ever disbursed in connection with this loan and the note and deed of trust were released upon request in January 1982.

permit applications on May 19, 1982; the tentative map was approved on June 15, 1982, subject to a number of conditions which (respondent represents) the general partners ultimately found unacceptable.

During the same period the general partners were pursuing approval of the tentative map, (respondent represents) they also sought, unsuccessfully, to bring their development costs within the amount of State Savings's proposed maximum loan. On June 9, 1982, the Webers assigned and transferred to the Probascos all of their interest in the acreage, with the exception of a 50 percent interest in profits generated by the development in excess of $8.5 million. On the same date the Probascos placed a number of their business interests in a chapter 11 bankruptcy. The Probascos filed a personal chapter 11 bankruptcy in August 1982, at which time all efforts to proceed with the project under the 1980 conditional loan commitment letter ceased.

### The Webers' Action Against State Savings

Sometime prior to September 1988 the Webers filed an action against State Savings alleging breach of contract (i.e., breach of the October 10, 1980, "commitment letter" regarding the $6.9 million development loan); fraud (an alleged oral promise by a State Savings loan officer on behalf of the entity to enter into a joint venture in the development of the Golden Dawn Ranch with the Webers); constructive trust, and rescission. They sought to recover expenses, lost profits and punitive damages.[3]

### History of Receivership

During September 1988, the Federal Home Loan Bank Board declared the former State Savings, by then operating under the name American Savings and Loan Association (American), to be insolvent. The FSLIC was appointed as receiver in December 1988; it transferred certain of the assets and liabilities of American, including this litigation, to a new entity, American Savings, a federal savings and loan association (American Savings). When American Savings was placed in receivership in December 1988, the FSLIC, again acting as receiver, assigned/transferred certain assets and liabilities— including this litigation—to New West. (See *Webb* v. *Superior Court, supra,* 225 Cal.App.3d at p. 994, fn. 1.) New West was substituted by name as the defendant prior to the scheduled trial date of March 11, 1991, and is the respondent here.

### March 11, 1991, Motion *in Limine*

On the date set for jury trial, the court heard several of New West's motions *in limine,* including a motion to exclude evidence of the October 10,

---

[3]The record on appeal does not contain a copy of the complaint (or any amended complaint). The breakdown of the causes of action is taken from "Defendant's Trial Brief."

1980, "commitment letter." In support of the motion, New West cited the *D'Oench, Duhme* doctrine (*D'Oench, Duhme & Co.* v. *F.D.I.C.*, *supra*, 315 U.S. 447), which provides that the FDIC, as receiver, may not be held liable for a claim that is inconsistent with the written documents of a failed banking institution or that is based upon unrecorded oral or written side agreements. The doctrine operates to bar both defenses and affirmative claims for relief and encompasses any claim against an insolvent institution that would either diminish the value of the institution's assets or increase its liabilities. The doctrine, as it pertains to the FDIC (also referred to as the Corporation), was codified in part by enactment of section 1823(e) in 1950. (*Webb* v. *Superior Court, supra*, 225 Cal.App.3d at pp. 1001-1002.) Section 1823(e) states:

"No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821[4] of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

"(1) is in writing,

"(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

"(3) *was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee,* and

"(4) has been, continuously, from the time of its execution, an official record of the depository institution." (Italics added.)

The Webers argued *D'Oench, Duhme* should not bar admission of the letter because the letter was a part of State Savings's records. They maintained section 1823(e) was inapplicable in that the instant case did not involve the FDIC and a failed bank; rather it involved the FSLIC as a receiver for a failed savings and loan. The matter was argued at length. The parties agreed with the language in *Webb* v. *Superior Court, supra*, 225 Cal.App.3d at pages 1001-1002, that by its very terms section 1823(e) applies only to the FDIC. However, the trial court reasoned that while the statute itself did not specifically apply to the FSLIC, "the codification itself is no different from the common law *D'Oench, Duhme* rule," and the

---

[4]Title 12 United States Code section 1821 deals with the role of the FDIC as insurer and receiver.

*D'Oench, Duhme* doctrine precluded admission of the October 10, 1980, letter.[5]

The trial court was persuaded by the authority of *People of State of Ill.* v. *Com. Mortg. Corp.* (N.D.Ill. 1990) 732 F.Supp. 885, 892, an action involving the FSLIC acting as intervener and conservator for a savings institution, Commonwealth Mortgage, a subsidiary of Commonwealth Savings Association. The court held an unsigned note containing erroneous information, apparently written by a Commonwealth Mortgage loan officer and contained in Commonwealth's files, that led to the inadvertent expiration of plaintiffs' period to lock-in a certain loan rate was barred "under *D'Oench, Duhme*[.]" (*Id.* at pp. 891-892.) However, in its analysis the district court, without discussion, equated the *D'Oench, Duhme* doctrine with the provisions of section 1823(e), detailed the provisions of that section and proceeded to apply the language of section 1823(e) to bar admission of the note:

"Obviously the misrepresentation referred to in the note, if such it was, does not qualify as evidence against FSLIC because *it was not signed by either the bank officer* or the Teasleys, [other loan applicants], *was not 'approved' by any Commonwealth committee (let alone its board of directors) and was not created contemporaneously with the making of the representation.*" (732 F.Supp. at p. 892, italics added.)

At that point in the *in limine* proceedings, counsel for the Webers determined exclusion of the October 10, 1980, letter—the basis for the breach of contract action—took "the heart out of the case." Counsel stipulated to entry of judgment in favor of New West and against the Webers, and an order to that effect was entered on April 15, 1991. The Webers filed a timely appeal, limiting the issue to the court's exclusion of "Evidence of Promises, Representations and Agreements Not Contained in the Written Agreements Authorized By State Savings' Loan Committee (The *D'Oench* Doctrine)."

### DID THE TRIAL COURT ERR IN EXCLUDING THE OCTOBER 10, 1980, LOAN "COMMITMENT LETTER" BECAUSE IT FAILED TO SATISFY THE TERMS OF SECTION 1823(e)?

The Webers contend the trial court erred in applying the requirements of section 1823(e) to this case. They contend it is erroneous to apply the requirements of the statute to the FSLIC as the statute solely addresses situations which arise involving the FDIC in its capacity as a corporate

[5]The court also (impliedly) excluded a letter dated June 21, 1982, from a State Savings real estate investment officer to the State Savings senior loan committee, proffered by plaintiffs as extrinsic evidence to explain "ambiguities" in the October 10, 1980, letter.

entity. Rather, they contend the letter would properly be admitted if the *D'Oench, Duhme* doctrine is applied since the common law does not specifically require approval of the loan commitment agreement by the appropriate board or committee as reflected in its minutes (§1823(e)(3)). New West replies the doctrine and statute are "substantively the same," and when construed " 'in tandem' " bar admission of the October 10, 1980, letter. We conclude, upon analysis of applicable federal and California case law, the trial court reached the proper conclusion when it barred admission of the letter.

### HISTORICAL BACKGROUND

Some history of the *D'Oench, Duhme* doctrine, its progeny and section 1823(e) is helpful to an understanding of this issue. As summarized in *Bartram* v. *Federal Deposit Ins. Corp.* (1991) 235 Cal.App.3d 1749, 1752 [1 Cal.Rptr.2d 614]:

"In *D'Oench, Duhme & Co.*, a securities dealer sold bonds to a bank. After default on the bonds, the firm's president executed a note in favor of the bank so that the transaction could be carried on the bank's books as an asset rather than as a liability. An oral agreement that the note need not be paid was reflected on a receipt, but not on the note. Thereafter, the bank charged off the note.

"The bank was declared insolvent and the FDIC was appointed as receiver. When the FDIC sued on the note, the oral agreement was raised as an affirmative defense. The court held that a federal policy, evidenced by the Federal Reserve Act, existed to 'protect [the FDIC] from misrepresentations made [by the bank] to induce or influence [third parties], including misstatements as to the . . . integrity of securities . . . .' [315 U.S. at p. 459.] Allowing a secret agreement as a defense would enable the notemaker to defeat the statute's purpose. The purpose of the federal policy articulated by the Supreme Court in *D'Oench* 'is to allow federal and state bank examiners to rely on a . . . bank's assets.' (*Langley* v. *FDIC* (1987) 484 U.S. 86, 91 . . . .) ' "The doctrine encourages debtors to memorialize all agreements in writing and reflects the equitable principle that losses incurred as a result of unrecorded arrangements should not fall on deposit insurers, depositors, or creditors but rather upon the person who could have best avoided the loss. [Citations.]" ' (*Webb* v. *Superior Court* (1990) 225 Cal.App.3d 990, 995 . . . .)" (See also *Fair* v. *NCNB Texas Nat. Bank* (N.D.Tex. 1990) 733 F.Supp. 1099, 1103.)

Section 1823(e) first appeared as a late amendment to the enactment of the Federal Deposit Insurance Act of 1950, a codification of the law pertaining

to the FDIC. It received little public debate or comment. It is questionable whether enactment of the section reflected an intention to codify *D'Oench, Duhme*; rather, it appears that Congress intended it serve as an adjunct to the federal policy embodied in that doctrine. On its face, section 1823(e) "codifies the positive duty of the FDIC to honor agreements between debtors and banks, and relieves the FDIC from accountability for oral agreements." (Note, *op. cit. supra*, 62 So.Cal.L.Rev. at pp. 275-277; *Federal Sav. & Loan Ins. Corp.* v. *Griffin* (5th Cir. 1991) 935 F.2d 691, 698.) The Depository Insurance Flexibility Act of 1982 resulted in a revision of section 1823(e) that expanded the flexibility of the FDIC in arranging a bailout or a purchase and assumption of a financially troubled bank. (Note, *op. cit. supra*, 62 So.Cal.L.Rev. at pp. 280-281.)

The protection provided federal bank insurers by the federal common law has grown even more expansive following *D'Oench, Duhme*. (Note, *op. cit. supra*, 62 So.Cal.L.Rev. at p. 290.) ▮ The doctrine was expanded to protect the FDIC as receiver, as well as the FSLIC in its receiver and corporate capacities. (*Vernon* v. *Resolution Trust Corp.* (11th Cir. 1990) 907 F.2d 1101, 1106, and cases cited therein.) "The doctrine has been expanded to encompass any claim against an insolvent institution that would either diminish the value of the assets held by the FSLIC or increase the liabilities of the insolvent institution. [Citation.]" (*Castleglen, Inc.* v. *Commonwealth Sav. Ass'n.* (D.Utah 1989) 728 F.Supp. 656, 671; *Webb* v. *Superior Court, supra*, 225 Cal.App.3d at p. 999, and cases cited therein.) Assignees of the FDIC and the FSLIC enjoy the protection of the doctrine, as do so-called " 'bridge banks' "—institutions authorized by the FDIC and FSLIC to operate failed banks and savings and loans—such as New West. (225 Cal.App.3d at p. 1001; *Bell & Murphy & Assoc.* v. *Interfirst Bank Gateway* (5th Cir. 1990) 894 F.2d 750, 754-755, cert. den. 498 U.S. 895 [112 L.Ed.2d 203, 111 S.Ct. 244].) A primary purpose of the *D'Oench, Duhme* doctrine as it stands today "is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." (*Langley* v. *FDIC* (1987) 484 U.S. 86, 91 [98 L.Ed.2d 340, 347, 108 S.Ct. 396]; *Walsh* v. *New West Federal Savings & Loan Assn., supra*, 234 Cal.App.3d at p. 1544.) The doctrine applies not only to defensive use of alleged oral promises (such as in *D'Oench, Duhme*) but also to offensive use, such as fraud or breach of contract claims based upon alleged oral agreements. (*Walsh* v. *New West Federal Savings & Loan Assn., supra*, 234 Cal.App.3d at p. 1544.)

*Webb* is the starting point of the Webers' argument. The court in *Webb*—a case involving the FSLIC as receiver with New West as the real party in interest—acknowledged that section 1823 did not apply by its very terms in that case (to bar an undocumented oral agreement), in that New West was a

"bridge bank" organized by the FSLIC, not the FDIC—the sole subject of the statute. Rather, the court reasoned "Webb is estopped by the doctrine as stated by the United States Supreme Court [in *D'Oench, Duhme*], he is not estopped by the statute." (*Webb* v. *Superior Court, supra*, 225 Cal.App.3d at pp. 1001-1002.) The Webers' analysis of the *Webb* case stops there, but the *Webb* court continued:

"'. . . As far as can be determined, no courts have held that *D'Oench* ought not to apply to FSLIC simply because 12 U.S.C. § 1823(e) only refers to the FDIC. . . .' (*Federal Sav. & Loan Ins. Corp.* v. *Musacchio* [N.D. Cal. 1988] 695 F.Supp. [1044,] 1051. See also, *e.g., Carteret Sav. Bank, P.A.* v. *Compton, Luther & Sons* (4th Cir. 1990) 899 F.2d 340, 343-344 ['[T]here is no material difference between the FDIC and the FSLIC as far as the public policy behind *D'Oench* and its progeny is concerned.']; [citations].)" (*Webb* v. *Superior Court, supra*, 225 Cal.App.3d at p. 1002.)

In *Walsh* v. *New West Federal Savings & Loan Assn., supra*, 234 Cal.App.3d 1539, 1541-1543, the plaintiffs sued State Savings (ultimately New West) for fraud, breach of contract, etc., after State Savings refused to transfer certain property to them pursuant to an oral promise by an ostensible agent. The FSLIC successfully raised the *D'Oench, Duhme* doctrine as a complete defense in the trial court. At the outset of the discussion of the *D'Oench, Duhme* doctrine in *Walsh*, the appellate court noted:

"While the express words of [12 United States Code section 1823(e)] apply exclusively to the FDIC, the statute's rationale ' "has been uniformly extended to the [FSLIC] and the savings and loan industry . . . ." (*Federal Sav. and Loan Ins. Corp.* v. *Locke* (W.D. Tex. 1989) 715 F.Supp. 573, 582, and cases cited there.)' (*Webb* v. *Superior Court* (1990) 225 Cal.App.3d 990, 999 . . . .) Courts generally 'consider the *D'Oench* doctrine and section 1823(e) in tandem, looking to the common law when construing the statute' (*Beighley* v. *Federal Deposit Ins. Corp.* (5th Cir. 1989) 868 F.2d 776, 785) and relying upon judicial interpretations of the statute when applying the common law." (234 Cal.App.3d at pp. 1543-1544, fn. 6.) The *Walsh* court concluded the case fell within the provisions of the *D'Oench, Duhme* doctrine because plaintiffs were, inter alia, attempting to enforce an oral agreement which would reduce the value of assets formerly held by State Savings. (234 Cal.App.3d at p. 1545.)

More recently, in *Bartram* v. *Federal Deposit Ins. Corp., supra*, 235 Cal.App.3d at pages 1750-1751, 1758, the appellate court concluded the *D'Oench, Duhme* doctrine barred the plaintiffs' fraud and negligence claim against an insolvent savings and loan association. The action centered on the

savings and loan's alleged breach of an undocumented promise. The failed savings and loan was taken over by the FSLIC Resolution Fund (the Fund), after the FSLIC was abolished in 1989. The FDIC was appointed manager of the Fund and ultimately substituted into the action. In this hybrid case involving the FDIC and a savings and loan institution, the court's resolution centered solely on the application of the *D'Oench, Duhme* doctrine; the court specifically did not consider whether section 1823(e) would bar the plaintiffs' claim. (*Id.* at p. 1758, fn. 6.)

### DISCUSSION

 While the trial court may have erred in appearing to equate the provisions of the *D'Oench, Duhme* doctrine and section 1823(e),[6] and in further applying the provisions of section 1823(e) in an action not involving the FDIC,[7] any such error does not undermine the soundness of its determination. The policy of the *D'Oench, Duhme* doctrine, as broadly expanded in the common law, should bar admission of the letter.

As recognized in *Walsh*, it is apparent from the case law that courts regularly rely upon judicial interpretations of section 1823(e) when applying the common law doctrine of *D'Oench, Duhme*. (*Walsh* v. *New West Federal Savings & Loan Assn., supra*, 234 Cal.App.3d at pp. 1543-1544, fn. 6; *Victor Hotel Corp.* v. *FCA Mortg. Corp., supra*, 928 F.2d at p. 1083 ["*D'Oench* and section 1823 prevent secret agreements between a subsidiary of a failed institution and a borrower from interfering with FSLIC's regulating duties. Consequently, the district court correctly extended *D'Oench* and section 1823(e) to bar Hotel Corporations' claims against FCA."]; *Twin Const., Inc.* v. *Boca Raton, Inc.* (11th Cir. 1991) 925 F.2d 378, 382, fn. 2 ["We . . . need not determine whether, because FDIC was substituted for FSLIC prior to the entry of summary judgment, the statutory codification in section 1823(e) rather than the common law of *D'Oench* and its progeny should apply to this

---

[6]"Section 1823(e) specifically applies only to agreements between the borrower and the bank, and denies as a defense the assertion that payment of the note results only when the four requirements of the statute are met. Thus, in the application of the statute, the borrower's conduct or participation in a scheme to deceive the insurer is not at issue. In contrast, the *D'Oench, Duhme* doctrine is a rule of equitable estoppel and, therefore, applies to *any* defense a borrower may assert in which the borrower participated in a scheme which tends to deceive the insurer. . . . [¶] . . . [T]he statute *expands D'Oench, Duhme* in that it applies to any agreement, whether or not it was 'secret,' and regardless of the maker's participation in a scheme. At the same time, however, the statute is *narrower* than *D'Oench, Duhme* in that it applies only to agreements, and not to other defenses the borrower might raise." (Note, *op. cit. supra*, 62 So.Cal.L.Rev. at pp. 271-272, fn. omitted, italics original.)

[7]*People of State of Ill.* v. *Com. Mortg. Corp., supra*, 732 F.Supp. 885, has yet to be cited for its implied holding that the express provisions of section 1823(e) apply to a savings institution under the conservatorship of the FSLIC.

case. We will reach the same result regardless."]; see, e.g., *People of State of Ill.* v. *Com. Mortg. Corp., supra,* 732 F.Supp. at p. 892.) Decisions in cases involving the FDIC are often treated as precedent in actions involving the FSLIC. (*McLemore* v. *Landry* (5th Cir. 1990) 898 F.2d 996, 1002, cert. den. *sub nom.* 498 U.S. 966 [112 L.Ed.2d 412, 111 S.Ct. 428]; *Federal Sav. and Loan Ins. Corp.* v. *Murray* (5th Cir. 1988) 853 F.2d 1251, 1254 ["While neither Congress nor the Supreme Court has extended [the protections of *D'Oench* or section 1823(e)] to FSLIC, we see no reason to treat these regulatory authorities differently."].)

As noted, the common law doctrine, as interpreted, seeks to "ensure mature consideration of unusual loan transactions by senior bank officials . . ." (cf. *Langley* v. *FDIC, supra,* 484 U.S. at p. 92 [98 L.Ed.2d at p. 3477])—so does section 1823(e)(3). The doctrine further encourages debtors to memorialize all agreements in writing (*Webb* v. *Superior Court, supra,* 225 Cal.App.3d at p. 995)—as does section 1823(e)(1).

All of the elements of the *D'Oench, Duhme* doctrine necessary to bar admission of the October 10, 1980, letter are present: an agreement (an apparent unconditional commitment by State Savings to loan a maximum of $6.9 million in an alleged joint venture development) unsubstantiated in the records,[8] an opportunity for a savings and loan examiner to be misled as to the potential liabilities of the institution, and a potential for loss by the financial institution. (*Walsh* v. *New West Federal Savings & Loan Assn., supra,* 234 Cal.App.3d at p. 1545; *Bartram* v. *Federal Deposit Ins. Corp., supra,* 235 Cal.App.3d at p. 1756; cf. Note, *op. cit. supra,* 62 So.Cal.L.Rev. at pp. 313-314.)[9] A document that purports to represent more than is clear on the face of it leaves bank regulators without warning as to the true nature and extent of a savings and loan's financial commitment. Whatever the nature of the Webers' further understanding pertaining to State Savings's obligation under the October 10, 1980, letter, the side agreement would have "the effect

---

[8]Without a copy of the complaint, it is difficult to decipher the exact nature of the Webers' claim. Nowhere in the record or in the appellants' brief before this court do the Webers maintain they complied with all the conditions precedent in the October 10, 1980, conditional loan commitment letter; in fact, their record reference to State Savings's failure to fund the project is a five-page reference to defendant's trial brief "(RT [*sic*] 35-40)" which details the Webers' *failure* to meet the conditions precedent.

[9]While the October 10, 1980, letter was contained in the records of State Savings, on its face it is not evidence of an unconditional promise to loan $6.9 million in a joint venture operation; any evidence of such an additional agreement is unsupported in the record. Indeed, the executive committee minutes pertaining to the consideration of the loan request evince the intent of the executive committee to fund a present loan in the amount of $1.1 million and to defer further consideration of a development loan to the real estate investment department once the subdivision map was approved. Whether tested under either *D'Oench, Duhme* or section 1823(e), the letter was properly barred.

of misleading regulatory authorities." (*Federal Sav. & Loan Ins. Corp.* v. *Griffin, supra*, 935 F.2d at pp. 698-699.)

## DISPOSITION

The judgment is affirmed. Costs on appeal to respondent.

Martin, Acting P. J., and Thaxter, J., concurred.